Pearson, J.
 

 His Honor was of opinion that if the prisoriei* had
 
 “
 
 feloniously possessed himself” of the slave in anothér county, and had afterwards carried her into the county of Wayne, he could be convicted in the latter county.
 

 The Statute under which the prisoner is indicted has been frequently before this Court, and has been discussed at great length in reference to its construction in many particulars; but this is the
 
 *193
 
 first time that a construction has been called for in regard to the
 
 venue,
 
 or county in which the offender may be prosecuted. Its construction being settled in so many particulars, narrows the question now presented, and renders its decision comparatively easy.
 

 Slavery, or a right of property in persons, as it exists in this State, was unknown in England, and consequently no rules had been deduced from the principles of the common law for the protection of that species of property ; and it was seen, at a very early day, that the rules applicable to other property would not afford adequate protection to the owners of slaves: for as the slave is an intelligent being and a moral agent, he can be taken from, or induced to leave his master, in many ways that could not be made to bear upon other property. '
 

 The law of larceny was found to be adequate for the protection of ordinary goods and chattels ; but in the first place, a slave was more valuable, and in the second place, the owner might be deprived of his slave, and it would be impossible to prove whether it was done by stealing, or by violence, or seduction, or in what way. So the law of larceny was not an adequate protection, and the object of the Act of 1779 was to create a new species of of-fence, by making it a capital felony to deprive the owner of his slave with a felonious intent, without reference to the means by which it was effected. Stealing, violence and seduction, are given as instances of the means whereby this new felony may be committed; in other words, the Statute creates but one offence, although it may be committed in many' different ways ; and one main purpose was to avoid the necessity of showing in what particular manner the master was deprived of his property.
 
 State
 
 v.
 
 Williams,
 
 9 Ire. 145.
 

 The general rule in regard to
 
 venue
 
 is, the prosecution must be in the county where the offence is committed. As an instance of the strictness of this rule, if a blow be given in one county, and the man dies in another county, the offender cannot be prosecuted at common law in either eounty ; for the offence consists of two acts, and one being done in one county and one in the other, it was not
 
 committed
 
 in either. In regard to counties, this was remedied by an old statute, but it was not until a few years ago,
 
 *194
 
 that one who gave a mortal blow in this State, and dragged his victim over the line into another State, where he died, could be indicted in either State.
 

 It was a stubborn rule of the common law, not only that a man should be tried by his peers, but that he should be tried by his neighbors, viz., those who lived in the vicinage, or near the place where the offence was alleged to have been committed. This rule has been gradually relaxed, and in our State, one charged with a criminal offence has the right of being tried by a juiy of freeholders in the county where the offence is committed; although they need not be selected from the vicinage or neighborhood.
 

 There are two exceptions to this rule : 1, where it is provided by statute that the offender may be tried in a county other than the county in which the offence was committed, (many statutes in England make this provision) ;
 
 2,
 
 where the offence is of a continuous nature, and may be committed as well in the second county as in the first. Of this simple larceny furnishes an example. For the sake of punishing a thief, if he steals goods in one county, and carries them into another, he may be indicted in tire latter county, because he will not be allowed to take advantage of his own wrong; and the law will consider the possession of the owner as continuing, when the goods came to the second county ,• and he, therefore, in contemplation of law,
 
 was taking
 
 as well as conveying away the goods every step he made. This is the only instance of “ a fiction ” on the criminal side of the docket, and its adoption was
 
 ex necessitate
 
 to prevent thieves from being unwhipped of justice.
 

 In this case, it is assumed that the prisoner
 
 “
 
 had feloniously possessed himself of the slave in another county —consequent-the offence was committed in that county, and the prisoner might, and ought, according to the rules of the common law, to have been there tried — unless the case here falls under an exception. It certainly does not fall under the
 
 first,
 
 because we have no statute on the subject; and the question is narrowed down to the single inquiry — does it fall under the
 
 second
 
 ?
 

 If the effect of the Act of 1779 is to create a new capital felony, unknown to the common law, without regard to its being done
 
 *195
 
 by‘stealing, violence, seduction or other means, so as to make it unnecessary for the jury to decide whether it be committed by the one means or the other, it is clear the prosecution must be in the county where the felony is committed ; that is, the county where the owner was feloniously deprived of his property, or in the language of his Honor,
 
 u
 
 where the prisoner feloniously possessed himself of the slave.” In that county the deed was done; and it cannot, as in the case of simple larceny, be considered to have been done over again in another county.
 

 It is said, if the mode by which the felony was committed, was stealing, then, although the statute makes it capital, still the larceny may, in contemplation of law, be considered as done in the second county. Without deciding whether, if a statute makes the stealing of a particular species of property a capital felony, the rule in relation to simple larceny is still applicable, it is sufficient to say the statute under consideration puts the offence, when done by stealing, on the same footing as when done by violence, seduction or other means. Consequently, to make a distinction, founded on the particular mode by which the felony was effected, would defeat one main purpose of the statute, and make it necessary for the jury to determine in which particular way the slave is taken. This, in most cases, it would be impossible for the jury to do ; and if it be necessary for juries to do it, prisoners will be acquitted on the ground of
 
 a doubt,
 
 or the jury must malee a guess. Therefore, no distinction, or separation by reason of the means used, can be allowed, without defeating the object of the statute — unsettling the principles laid down in the cases of
 
 Williams,
 
 Martin,
 
 Hardin, Haney and Jernigan
 
 — and losing the headway gained towards the séttlement of a very important and difficult subject of law in relation to this peculiar species of property.
 

 If the offence, when committed by one of the means pointed out, cannot be prosecuted except in the county where the first caption is made, it follows that the prosecution must be in that county; and so the question is narrowed down to this : — if a slave be taken and carried away by violence, with a felonious intent, must the prosecution be in the county where the violence is used ? or may it be in any county into which the slave is after-
 
 *196
 
 wards carried ? Upon this question the authorities leave no room for doubt or argument. In
 
 Fulwood's
 
 case, Cro. Jac. 482, 488, cited 1 Hale 660, these points were resolved in reference to 3 H. 7, ch. 2, which makes it a capital felony to take by violence a female heiress, and many or defile her : — 1st., if a woman be taken forcibly in the county of Middlesex, and married in the county of Surry, the fact is indictable in neither county ; for the taking without the marriage, nor the marriage without the taking, make not felony; 2ndly, but although she be first taken in the county of Middlesex, if the force be continued in the county of Surry,
 
 and the jury so jind the fact,
 
 it is indictable in the county of Suriy. In that case, she was seized in the county of Middle-sex, her mouth gagged to prevent outcry, forced into a carriage, and thus taken into the county of Surry, and the jury find the force was continued in that county.
 

 In the case now before us, if the original taking was by violence, there is no finding that the violence was continued in the county of Wayne — indeed there was no evidence tending to show it. On the contrary, when seen in that county, the negro was riding in a covered wagon, very comfortably wrapped up in a blanket.
 

 “
 
 Where clergy is ousted on circumstances of aggravation, such circumstances must
 
 all
 
 be proved to have happened within the county in which the offender is tried — otherwise, the fact of the larceny only being established in that county, he will be entitled to clergy ” — 2 East., 773 :
 
 e. g.,
 
 an indictment for robbery must be in the county where the violence is used, although the offender may be tried in the county, into which he carries the goods, for simple larceny. So an indictment for stealing linen from the bleaching grounds, which is made a capital felony by statute, must be in the county where the goods are first taken.
 

 Without reversing former decisions, and putting the matter at large, we feel bound to decide that the prisoner could only be tried in the county where the first caption of the slave took place. It remains for the Legislature, if deemed expedient, to provide that the offender may be prosecuted in any county into which he carries the slave, as has been done by a statute in England, in case of robbery and in case of stealing from the person on Rail»
 
 *197
 
 road cars, or steamboats, or stages, to avoid the necessity of proving in which county the original taking was committed.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo
 
 awarded.'